IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADRIANA RENE MATTHYS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-17-2294 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 18) and Defendant's cross Motion for Summary Judgment (Document No. 19). After considering the motions for summary judgment, Defendant's responsive briefing (duplicate Document Nos. 20 & 21), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

**I.     Introduction**

Plaintiff, Adriana Rene Matthys ("Matthys") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her

application for adult child disability benefits on the income of her deceased father. In one claim, Matthys maintains that the ALJ's determination that she "could perform full time work is not supported by substantial evidence." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II. Procedural History

On or about December 30, 2014, less than one month before her 18th birthday, Matthys filed an application for disability insurance benefits as a disabled adult child on her deceased father's account. She alleged that she had been disabled since December 1, 2001, as a result of an attention deficit hyperactivity disorder (ADHD), an anxiety disorder, and a pervasive development disorder. (Tr. 122, 231-32, 260). The Social Security Administration denied her application at the initial and reconsideration stages. After that, Matthys requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, William Sharp, held a hearing on May 20, 2016, which was reconvened on October 11, 2016, at which Matthys' claims were considered *de novo*. (Tr. 30-69; 70-121). Thereafter, on March 7, 2017, the ALJ issued his decision finding Matthys not disabled. (Tr. 10-19).

Matthys sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On

May 22, 2017, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's March 7, 2017, decision thus became final.

Matthys filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment. The appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen,* 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one

4

is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found at step one that Matthys had not engaged in substantial gainful employment since her alleged onset date of December 1, 2001. At step two, the ALJ determined that Matthys had the following severe impairments: autism, anxiety, affective disorder (depression), attention deficit hyperactivity disorder (ADHD), and pervasive developmental disorder. At step three, the ALJ concluded that Matthys did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 12.02, 12.06 and 12.10. The ALJ then determined that Matthys had the "residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [she] is limited to remember and carry out simple instructions and making simple decisions, [she] must have a low stress job that is not requiring assembly line production work, [her] interactions with supervisors is not limited, but only occasional interaction with co-workers and the public, and [she] may be off task less than ten percent of the day due to psychological conditions." (Tr. 14). The ALJ then concluded, at step four, that Matthys had no past relevant work. At step five, using the aforementioned residual functional capacity assessment, and upon reliance on the testimony of a vocational expert, the ALJ concluded that there were jobs in significant numbers in the regional and national economy that Matthys could perform, including office cleaner, garment sorter, and assembler, and that Matthys was, therefore, not disabled.

In this appeal, Matthys maintains that the record does not contain substantial evidence to support the ALJ's conclusion that she could engage in full-time work. According to Matthys, the most salient evidence in the record is the evaluation completed by Dr. Adriana M. Strutt on May 6, 2016. In that evaluation, which the ALJ only gave "some" weight, Dr. Strutt opined that Matthys was "unable to function in a competitive, sustained manner without continued psychiatric care" and

that Matthys would be absent from work more than four days a month. Matthys maintains that this opinion was fully supported by Dr. Strutt's findings, as well as her own testimony and the testimony of her mother at the hearing, and that the ALJ had no contrary "credible evidentiary choices" that could support his decision.

V.  **Discussion**

As much of Matthys' argument revolves around the findings and opinions of Adriana M. Strutt, Ph.D., that is where the Court will begin. On May 6, 2016, Dr. Strutt conducted an "Independent" Medical Evaluation of Matthys, which included a clinical interview of Matthys and her mother, and the administration of numerous intelligence and psychological tests.[1] Dr. Strutt's findings were detailed and comprehensive, and covered Behavioral Observations; basic mental status; motivation; intellect; achievement; memory; attention; processing speed and executive functioning; cognitive testing; mood and behavioral tendencies; and personality. Dr. Strutt diagnosed Matthys with a mild neurocognitive disorder, a generalized anxiety disorder (by history), attention deficit disorder (by history), pervasive development disorder (by history), and borderline personality disorder (by history), and wrote in the prognosis section of her evaluative report:

> Ms. Adriana Matthys is a 19-year-old, right-handed, Caucasian female with a history of grand mal seizures, cerebral palsy, seasonal allergies, sleep apnea, pre-diabetes, obesity, ADHD, anxiety, Asperger's/Pervasive Developmental Disorder, and Borderline Personality Disorder.

---

[1] These test includes the Wechsler Adult Intelligence Scales-IV, Wechsler Memory Scale-Revised, Trail Making test A&B, Wide Range Achievement Test-4th Edition, Rey Auditory Verbal Learning Test, Brief Symptom Inventory, Symptom Validity Measure, and Minnesota Multiphasic Personality Inventory 2nd Edition, Restructured Form.

7

> Based upon her constellation of symptoms, Ms. Matthys's prognosis for rehabilitation is poor given her impairments in auditory attention and short-term memory, and her variable level of engagement/motivation.
>
> Moreover, her current psychiatric symptomology leads to distress and impairment in functioning socially, vocationally, and cognitively. Ms. Matthys is in need of intensive psychiatric services, which will consider her cognitive areas of weakness (impairments in attention and short-term memory). A review of her medications is also warranted to ensure she is receiving optimal treatment.
>
> Her cognitive skills will impede her from engaging and benefitting from Dialectical Behavioral Therapy. Given her cognition and medical history, she should obtain services from a behavioral specialist.
>
> In her current state, Ms. Matthys is unable to function in a competitive, sustained manner without continued psychiatric care.

(Tr. 613). Dr. Strutt then completed a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)" form, indicating therein that Matthys would be "unable to meet competitive standards" in the following areas of mental abilities and aptitudes needed to do unskilled work:

> maintain attention for two hour segment
>
> maintain regular attention and be punctual within customary, usually strict tolerances
>
> work in coordination with or proximity to others without being unduly distracted
>
> complete a normal workday and workweek without interruptions from psychologically based symptoms
>
> perform at a consistent pace without an unreasonable number and length of rest periods
>
> accept instructions and respond appropriately to criticism from supervisors
>
> get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes
>
> respond appropriately to changes in a routine work setting
>
> deal with normal work stress

(Tr. 615). Dr. Strutt explained her assessment of Matthys' abilities and aptitudes to do unskilled work as follows:

> Cognitive testing revealed impairments in auditory attention, graphomotor transcription, and verbal and visual short-term recall. Results should be interpreted with caution given her variable level of engagement and motivation. Findings are consistent with her mother's report of day-to-day problems with cognition and meet criteria for a diagnosis of Mild Neurocognitive impairment.
>
> In addition, her psychiatric history is complex (i.e., Borderline Personality Disorder) and her myriad of psychological diagnoses impacts her ability to function in a sustained and competitive manner.
>
> Her ability to manage stress and to appropriately interact with peers will be impacted by her emotional lability and her poor coping mechanisms.

(Tr. 616).

The ALJ, afforded only "some" weight to Dr. Strutt's evaluation and her opinions, finding that her evaluation "supports some limitations in these areas but not employment preclusive limitations." (Tr. 17). The ALJ further wrote, in his consideration of Dr. Strutt's opinions, that:

> The check-list exceeds the evaluation details, and it is based on a one-time visit, not an adequate longitudinal relationship required for treating physician status. Also, as recognized by the doctor, the claimant over reported symptoms making the history and diagnosis not as reliable.

(Tr. 17).

Dr. Strutt was not, as noted by the ALJ, Matthys' treating physician. The ALJ was therefore not required to conduct the multi-factor assessment of Dr. Strutt's opinions set forth by the Fifth Circuit in Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000). The ALJ was, nevertheless, required to give some explanation for the weight given to all the acceptable medical source opinions in the record. *Kneeland v. Berryhill*, 850 F.3d 749 (5th Cir. 2017). Although such an explanation must be more than boilerplate, *id.* at 761, it need not be significantly detailed.

9

The ALJ's explanation for the weight given to Dr. Strutt's opinions is sufficient and supported by the other evidence in the record, including the opinions of two other physicians who conducted neuropsychological evaluations of Matthys on March 11, 2015 and April 20, 2015, respectively. First, there is no objective medical evidence in the record that Matthys' impairments have rendered her unable to engage in the limited range/type of work identified by the ALJ. Second, the ALJ concluded that Matthys' subjective complaints about her mental impairments were not fully consistent with the "medical treatment history, educational records and activities of daily living,." Third, and most importantly, two neuropsychological evaluations in March and April of 2015, yielded results and opinions that differed from Dr. Strutt's. Dr. Michael Knox administered the same type of intelligence and psychological tests as Dr. Strutt, and while he also found that Matthys had attention deficits and emotional problems, he opined that she would benefit from job training and coaching "in order to maximize her vocational success." (Tr. 510-512). Dr. Daniel Fox likewise administered the same type of intelligence and psychological tests as Dr. Strutt , and concluded, at the end of his extremely comprehensive evaluation, that Matthys was "cognitively capable of working in some capacity" and that she would benefit "from enrolling in vocational classes to help her achieve employment" and "participating in a program developing interview-skills and focused job-application techniques, in order to maximize her employment potential." (Tr. 514-524). These two expert medical opinions aligned with and support the ALJ's RFC determination and his conclusion that Matthys was not disabled as of the date of his decision. While Dr. Strutt's opinion is contrary, it was within the ALJ's province to consider and weigh all the expert medical opinions in the record, which he did. Because the ALJ assigned reasons to the weight given those opinions, reasons which are consistent with the record as a whole, the ALJ's decision is supported by

substantial evidence and comports with the governing law. This Court is not in a position to re-weigh the evidence or second-guess the ALJ's consideration of the conflicting expert medical opinions in the record. The decision of the ALJ must, therefore, be affirmed.

**VI.     Conclusion and Order**

Based on the foregoing, and the determination that the ALJ's decision is supported by substantial evidence and that the ALJ properly and sufficiently justified the weight he gave the opinion of Dr. Strutt, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 18) is DENIED, and decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 12th day of March, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE